**Jorge Luis GAONA, Appellant,**

v.

**Francisca M. GAONA, Appellee.**

**No. 16712.**

Court of Appeals of Texas,
San Antonio.

Jan. 27, 1982.

Richard G. Morales, Sr., Laredo, for appellant.

Francisca M. Sciaraffa, pro se.

Before CADENA, C. J., and BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a judgment modifying a previous divorce decree pursuant to Tex.Family Code Ann., sec. 14.08 (Vernon Supp.1982). The father of a nine year old boy appeals from the order which changes the managing conservatorship from the father to the mother and requires him to pay $150.00 per month child support. We agree with appellant's contentions that the evidence fails to support the pleadings and that modification of the decree was error. We reverse and render the judgment.

In the divorce decree of May 17, 1978, the county court at law[1] appointed appellant managing conservator of the only child of the marriage, Jorge Luis Gaona, Jr., born in 1972. The appellee, who was appointed possessory conservator with visitation privileges, did not appear personally at the divorce hearing, but she was represented by counsel. Both the appellee and her counsel signed their names to the instrument which included the appointment of appellant as the managing conservator.

Appellee filed her first motion to modify the judgment in January, 1979. Appellant answered the motion and the case was set for a hearing. The record fails to disclose any action taken on these instruments. Her second motion to modify the judgment was filed on October 15, 1980. She alleged:

> The circumstances of the child or a person affected by the order to be modified have materially and substantially changed since the entry of the order and the Movant requests that the relative rights, privileges, duties and powers of the conservator be modified as follows: That Movant be appointed permanent Managing Conservator of the child.

Appellee further applied for, and got, a writ of attachment for the reason that the child was "physically abused by the respondent on October 10, 1980, and the child went to stay with Movant for a few days. The child had bruises and cuts on his face and he claims to be physically abused by the Respondent."

We learned from the record of the nonjury modification hearing that the unusually "red lips" of the child on October 10, 1980, may have resulted from chapping and that the origin of a small round bruise on his cheek that day was not actually determined. Further that the child appeared "almost ready to cry" when he appeared at his maternal grandmother's house. This was testimony by appellee's sister. An employee of the State Department of Human Resources testified she investigated an October 9th complaint of child abuse, but it was not validated by her.

The evidence disclosed that appellant worked for a local oil company as a foreman, earning approximately $950.00 to $1,000.00 each two weeks. He left home for work about 4:30 a. m., returning very late on most week nights, and that his recreational time with the boy was necessarily

---

1. The county court at law of Webb County has jurisdiction concurrent with the district court in divorce cases. Tex.Rev.Civ.Stat.Ann. art. 1970–360, § 3(b) (Vernon Supp. 1965–1980).

limited to the weekends. The paternal grandmother lived with her son and cared for her grandson. Evidence showed that their house was a nice one and well kept. We learned that the boy dressed well, attended school regularly, and studied his "catechism" on Sundays. He played with neighborhood children and appeared "normal." The father expressed parental concern and told of his love for his son. He "checked on" the boy at night, kissing him and covering him. He played ball with him. No evidence of any "drinking problem" was shown, although questions about this were asked.

From the record we learned that the mother, appellee here, married again in May of 1980, following the birth of a baby girl in January. Her present husband worked for the city fire department as a firefighter. He did not testify. Appellee's sister testified that she saw signs of physical abuse on October 10, 1980, and that the child told her his father had beaten him. Both the paternal grandmother and appellant stated that the father was at work at that time on that day. They both testified that the boy received a spanking if a teacher reported misbehavior. The principal testified that no bruises or injury had been reported to him as required by school policy, and he observed none. Further, the principal stated that the mother had picked the child up from the school a few days earlier before the writ of attachment was brought to the school by the deputy sheriff. Appellee testified she worked as a meat wrapper at an H.E.B. store in Laredo, but planned to quit her job and stay with the boy and her daughter at home.

■ Tex.Family Code Ann. § 14.08 (Vernon Supp. 1976–1982) states:

(c) After a hearing, the court may modify an order or portion of a decree that:
(1) designates a managing conservator if the circumstances of the child or parent have so materially and substantially changed since the entry of the order or decree to be modified that the retention of the present managing conservator would be injurious to the welfare of the child and that the appointment of the new managing conservator would be a positive improvement for the child.

The statute and decisions place a heavy burden upon the party seeking to modify the decree. *Armstrong v. Armstrong*, 601 S.W.2d 724, 725 (Tex.Civ.App.—Beaumont 1980, writ ref'd n. r. e.). Until the moving party has discharged the onerous burden imposed upon him by § 14.08(c)(1), *supra*, the trial court must deny the motion to change the custody. *Armstrong v. Armstrong, supra*, at 725. In *D.W.D. v. R.D.P.*, 571 S.W.2d 224, 226 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n. r. e.) it was stated,

"There is no longer the necessity or even the right for a trial court to consider the welfare and best interests of the child unless the parent seeking custody can first show that the continuance of the status quo would be injurious to the child. This is now the 'threshold inquiry' to be resolved in trial of a change of custody suit."

We have reviewed all of the evidence upon which the trial court based its order modifying the decree. The order states simply that the "Court finds that the material allegations contained in Movant's Motion are true and that the following orders are in the best interest of the child . . . ."

At the close of the nonjury trial the court stated; among other matters:

"I am going to modify the decree. I am going to grant the managing conservatorship . . . to Mrs. Gaona, or Mrs. Sciaraffa now . . . . I would like to say this for the record: I feel that the custody of this child was given to the father because the mother was not present at hearing, and therefore the judge that heard the case didn't hear any evidence on which to substantiate a different decision, and I feel that at this point in time the mother is entitled to have her son at least for the next two years and three months unless there is some radical change in the child, and then, [appellant's counsel], you can advise your client that he can come back and show where you have any different

circumstances or that there has been a radical change in the environment or mode of living of this child."

After a review of the entire record, we find that the appellee did not prove (1) that the retention of appellant as managing conservator would be injurious to the welfare of the child and, (2) that the appointment of a new managing conservator would be a positive improvement for the child. We reverse for failure of the evidence to meet the dual requirements of sec. 14.-08(c)(1) *supra.* *Armstrong v. Armstrong,* *supra.*

The judgment of the trial court is reversed and rendered to restore the parties to the status quo as ordered in the divorce decree.